1

2

3

4

5

6            IN THE UNITED STATES DISTRICT COURT

7              FOR THE DISTRICT OF ARIZONA

8

9   Allan H. Morgal,                    )   No. CV-11-2552-PHX-NVW (BSB)
                                         )
10            Petitioner,               )   **REPORT AND RECOMMENDATION**
                                         )
11  vs.                                  )
                                         )
12  Charles L. Ryan, et. al,            )
                                         )
13            Respondents.              )
                                         )
14  _____       )

15        Allan K. Morgal (Petitioner) has filed a *pro se* Petition for Writ of Habeas Corpus

16  pursuant to 28 U.S.C. § 2254. (Doc. 1.)  Respondents contend that the Petition should be

17  dismissed as untimely under the Anti-Terrorism and Effective Death Penalty Act (AEDPA),

18  which provides the statute of limitations applicable to state prisoners seeking federal habeas

19  corpus relief.  (Doc. 10.)  Alternatively, Respondents argue that the State court applied a

20  procedural bar to dismiss Petitioner's post-conviction relief proceeding and therefore federal

21  habeas review is also precluded.  (Doc. 10.)  Petitioner opposes Respondents' assertions and

22  argues that he is entitled to relief on the merits of his claims.  (Docs. 13 and 15.)  For the

23  reasons set forth below, the Court finds the Petition timely under the AEDPA, but that Petitioner

24  is not entitled to relief because his claims are procedurally barred from federal habeas corpus

25  review or lack merit.[1]

26  _____

27        [1]  The Court had previously ordered additional briefing addressing the merits of
    Petitioner's claims.  After further review, and consideration of the Honorable Neil V. Wake's
28  November 13, 2012 Order, the Court finds such briefing unnecessary.

**I. Factual and Procedural Background**

    **A. Indictment, Trial, and Sentencing**

In 2005, Petitioner was indicted in the Arizona Superior Court, Maricopa County, on one count of fraudulent schemes and artifices, two counts of theft, and one count of money laundering. (Respondents' Ex. B, Doc. 10-1 at 12.[2])  The evidence presented at the 2006 jury trial established that Petitioner and Elliot Koidin (E.K.[3]) met in 1999 when they were neighbors in Scottsdale, Arizona.[4]  Petitioner told E.K. that he sold furniture to outlets in Phoenix and they discussed the possibility of a joint business venture in which Petitioner would manage the business and E.K. would supply the capital.  *Morgal*, 2008 WL 3864070, at *1.  On December 12, 2003, Petitioner's company, AKM Specialties, LLC, entered into an independent contractor agreement with E.K.'s company, The Import/Export Source, LLC.  Under this agreement, Petitioner's company would purchase pottery from suppliers in Mexico, specifically Jose ("Pepe") Perez and Jorge Arthur, and then sell it to grocery stores in Arizona.  *Id.*

Pursuant to the agreement, E.K. was initially to provide $72,500 in start-up funds to suppliers Perez and Arthur, with the agreement that the parties would split net profits from the business on a percentage basis.  E.K. expected a full return on his investment, plus a 20% profit.  *Id.*  On December 23, 2003, E.K. sent Perez and Arthur the start-up funds.  *Id.* at *2.  In January 2004, although there was only one order from an Arizona grocery store, Petitioner told E.K. that he expected more orders, but needed more money to send the suppliers.  *Id.*

---

[2]  Citations to "Respondents' Ex." are to exhibits to Respondents' Limited Answer to Petition for Writ of Habeas Corpus (Doc. 10), which appear at docket 10-1.

[3] Although Elliot Koidin is referred to by name in parts of the record, the appellate court refers to him as "E.K." (Respondents' Ex. B, doc. 10-1 at 10).  For consistency, the Court will refer to him as E.K.

[4]  The evidence presented during trial is summarized from the Arizona Court of Appeals' memorandum decision.  (Respondents' Ex. B, doc. 10-1 at 10); *see also State v. Morgal*, 2008 WL 3864070 (Ariz. Ct. App. Apr. 3, 2008).  The state court's factual determinations are "presumed to be correct" and Petitioner has not "rebut[ted] the presumption of correctness by clear and convincing evidence."  *See* 28 U.S.C. § 2254(e)(1).

E.K., however, became concerned when Petitioner offered dubious explanations for the lack of purchase orders. E.K. contacted his son, who owned a business distributing goods to retailers, and E.K.'s son arranged for one of his clients, retail chain Tuesday Morning, to purchase a large amount of the Mexican pottery. *Id.* "The business entities of E.K., his son, and [Petitioner] verbally agreed under new terms to sell the merchandise to Tuesday Morning." *Id.* at *1. After E.K. and Petitioner met with suppliers in Mexico about this order, E.K. transferred additional funds to supplier Arthur, who was to send twenty-two or twenty-three trailers of merchandise to Tuesday Morning in August 2004. *Id.* Between December 2003 and August 2004, E.K. made $337,500 in payments to the suppliers, sending $47,500 to Perez and $290,000 to Arthur. *Id.* Because Arthur only shipped thirteen trailers to Tuesday Morning by the ship dates and some of the merchandise was damaged, Tuesday Morning cancelled the remainder of the order. "E.K. received $154,500 from the Tuesday Morning order and $12,504 from one [grocery store] order." *Id.*

Beginning in December 2003, Petitioner told supplier Perez he was having legal trouble and directed Perez to transfer some of E.K.'s funds to Petitioner by depositing money directly into designated bank accounts in the United States. Perez sent over $22,000 of the $47,500 he had received from E.K. to Petitioner. *Id.* at *2. Because Perez was returning money to Petitioner, he did not believe the order was serious, stopped production, and terminated the relationship in April 2004. Perez only shipped two truckloads of merchandise worth about $21,000 to Petitioner's company. *Id.*

Petitioner also directed supplier Arthur to transfer some of E.K.'s funds into bank accounts belonging to Petitioner's company, AKM Specialties, Petitioner's then girlfriend, and several attorneys. *Id.* Arthur sent approximately $144,900 of the $290,000 he had received from E.K. to Petitioner. Arthur also concluded that the order was not serious, slowed production, and could not fill the Tuesday Morning order by the August 2004 deadline. *Id.* Petitioner's former girlfriend testified that he transferred money to her to hide it from his ex-wife and avoid child support obligations and so he could use the money for his "lavish"

- 3 -

lifestyle. *Id*. According to Petitioner's attorneys, Petitioner transferred money to them to pay fees for non-business purposes. *Id*.

In August 2004, E.K. went to Mexico and met privately with suppliers Perez and Arthur. After reviewing documents and communications between Perez and Petitioner, and between Arthur and Petitioner, E.K. discovered that Perez and Arthur had transferred his funds to Petitioner without his knowledge and consent. *Id.* at *2. Petitioner saw E.K., Perez, and Arthur together in Mexico and "there was a bitter confrontation between E.K. and [Petitioner]." *Id*. Later, Petitioner filed a lawsuit against E.K., alleging breach of the independent contractor agreement. After E.K. changed the locks on the warehouse that allegedly contained merchandise belonging to Petitioner and E.K., Petitioner also sued the landlord of the warehouse and obtained some of the merchandise in the warehouse, which E.K. claimed belonged to him. *Id*.

E.K. contacted the Arizona Attorney General's Office and met with Agent Walsh. Agent Walsh investigated the case, subpoenaed documents, and verified the transfers of funds between the parties. He interviewed Petitioner, who claimed that the total amount of money he received from Perez and Arthur, $120,000, was his portion of the profits from the business. *Id*. at *3.

After a trial, the jury found Petitioner guilty as charged and found the amount of theft to be $25,000 or more as to each charge. (Respondents' Ex. A, doc. 10-1 at 2-7.) The jury subsequently found three aggravating factors for sentencing. (*Id.*) At the sentencing hearing, the trial court found that Petitioner had two or more prior felony convictions. (Respondents' Ex. B, doc. 10-1 at 12.) After considering aggravating factors, including Petitioner's lengthy criminal history and financial harm to the victim, and finding no mitigating factors, the court imposed an aggravated sentence of twenty-two years' imprisonment for the fraudulent schemes and artifices conviction, presumptive terms of fifteen-and-three-fourth years' imprisonment on each of the theft convictions, and ten-and-one-half years' imprisonment for the money laundering conviction. The court ordered the sentences to run concurrently. (Respondents' Ex. D, doc. 10-1 at 26-27.)

- 4 -

**B.  Direct Appeal**

Petitioner, through counsel, filed a timely direct appeal raising two claims.  First, Petitioner argued that the prosecutor engaged in misconduct by eliciting inadmissable hearsay from E.K. during direct examination and by vouching for a witness during closing argument. Second, Petitioner argued that the trial court erred in denying his motion for a mistrial based on the prosecutor's misconduct.  (Respondents' Ex. C, doc. 10-1 at 16; Ex. D, doc. 10-1 at 19-40.) On April 3, 2008, the Arizona Court of Appeals rejected Petitioner's claims finding that the prosecutor did not engage in misconduct during direct examination or closing argument and that the trial court did not abuse its discretion in denying the motion for a mistrial.  (Respondents' Ex. B, doc. 10-1 at 10.)  Petitioner did not file a petition for review in the Arizona Supreme Court.

**C.  Post-Conviction Review**

While Petitioner's direct appeal was pending, he commenced two separate post-conviction proceedings pursuant to Arizona Rule of Criminal Procedure 32, which the trial court dismissed without prejudice to refiling after the conclusion of Petitioner's direct appeal. (Respondents' Exs. E-G, H-J.)  The Arizona Court of Appeals affirmed Petitioner's conviction and sentence on April 3, 2008.  (Respondents' Ex. B; *Morgal*, 2008 WL 3864070.)

On May 16, 2008, after the conclusion of his direct appeal, Petitioner filed a third notice of post-conviction relief pursuant to Rule 32.  (Respondents' Ex. K, doc. 10-1 at 71.)  The court appointed counsel, who filed a notice stating that she had found no claims to raise in a Rule 32 proceeding and requesting additional time for Petitioner to file a *pro se* petition.  (Respondents' Ex. L, doc. 10-1 at 76.)  On December 19, 2008, the trial court granted the extension and ordered Petitioner to file a *pro se* petition for post-conviction relief within forty-five days of the court's order, or by February 3, 2009.  (Respondents' Ex. M.)

After that deadline had expired, on April 2, 2009, Petitioner filed a petition raising the following claims: (1) trial counsel rendered ineffective assistance by failing to adequately review the State's disclosures and interview witnesses; (2) the prosecutor failed to disclose

exculpatory evidence in violation of *Brady v. Maryland*, 371 U.S. 812 (1962); (3) the State violated Petitioner's right to due process by failing to hold a restitution hearing; (4) the trial court erred in failing to hold a hearing pursuant to *State v. Donald*, 10 P.3d 1193 (Ariz. Ct. App. 2001); and (5) the trial court violated Petitioner's right to due process by failing to provide him with trial transcripts.  (Respondents' Ex. N, doc. 10-1 at 83-101; doc. 13, ex. L.)

On August 28, 2009, the trial court dismissed the petition stating that: "[t]he Court has received and reviewed the Petition for Post-Conviction Relief, each and every claim do not present a colorable claim.  Further, they are precluded as untimely."  (Respondents' Ex. O, doc. 10-1 at 103-04.)  The court "summarily dismiss[ed]" the petition for post-conviction relief pursuant to Rule 32.6(c).  (*Id.*)

On September 9, 2009, Petitioner filed a petition for review in the Arizona Court of Appeals and argued that: (1) trial counsel rendered ineffective assistance by failing to "review *Brady* materials [and] witness statements;" (2) the State failed to disclose exculpatory evidence; (3) "there was no *Donald* hearing"; (4) "there was no restitution hearing"; and (5) the State failed to disclose exculpatory materials in violation of *Brady*.  (Respondents' Ex. P; doc. 10-1 at 105-113.)  The Arizona Court of Appeals summarily denied review on November 23, 2010. (Respondents' Ex. Q.)   The Arizona Supreme Court denied review on August 8, 2011. (Respondents' Ex. R.)

On May 6, 2010, Petitioner filed a fourth notice of post-conviction relief.  (Respondents' Ex. S.)  Petitioner argued that the court should permit the "untimely notice based on newly discovered material facts."  (Respondents' Ex. T, doc. 10-1 at 126.)  On June 23, 2010, the court rejected Petitioner's argument, found that he "fail[ed] to state a claim for relief which can be granted in an untimely Rule 32 proceeding," and  dismissed the notice as untimely pursuant to Rule 32.4(a). (*Id.*)

## II.  Statute of Limitations

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) provides a one-year statute of limitations for state prisoners to file a petition for writ of habeas corpus in federal

court. 28 U.S.C. § 2244(d)(1).  That period generally commences on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Respondents contend that Petitioner's pending Petition for Writ of Habeas Corpus is untimely because it was not filed within one year of the date on which his challenged convictions "became final by the conclusion of direct review," 28 U.S.C. § 2244(d)(1), and he has not established a basis for tolling the limitations period.  As set forth below, the Court disagrees and finds the habeas Petition timely.

Here, Petitioner's convictions became final on May 4, 2008 and the limitations period commenced the next day.[5]  *See* 28 U.S.C. § 2244(d)(1)(A); *Hemmerle v. Schriro*, 495 F.3d 1069, 1072-74 (9th Cir. 2007) (direct appeal is final upon expiration of time for seeking further appellate review); *Bowen v. Roe*, 188 F.3d 1157, 1158 (9th Cir. 1999) (same).  Petitioner, therefore, had until May 4, 2009 to file a federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner did not file his habeas Petition until December 23, 2011 and, therefore, it is untimely unless statutory or equitable tolling applies.

**A.  Statutory Tolling**

The AEDPA's statute of limitations is tolled during the time that a "*properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2) (emphasis added).  Thus, statutory tolling applies only if  Petitioner's third application for post-conviction relief was "properly filed."[6] In their Limited Answer, Respondents rely upon the Supreme Court's decisions in *Pace*

_____

[5] The Arizona Court of Appeals affirmed Petitioner's convictions and sentences on direct review on April 3, 2008.  Petitioner had thirty days, or until May 4, 2008, to file a petition for review in the Arizona Supreme Court. *See* Ariz. R. Crim. P. 31.19(a). Petitioner did not do so; therefore, his convictions became final on May 4, 2008.

[6] Petitioner's first and second notices of post-conviction relief were filed and dismissed without prejudice before the limitations period commenced. (Respondents' Exs. E-G, H-J.) Petitioner's fourth notice of post-conviction relief was dismissed as untimely under Rule 32.4(a) and therefore was not "properly filed."  (Respondents' Ex. T.); *see Pace v. DiGuglielmo*, 544

*v. DiGuglielmo*, 544 U.S. 408, 413 (2005), and *Allen v. Siebert*, 552 U.S. 3 (2007), to argue that because Petitioner did not file a timely *petition* for post conviction relief, his *application* for post conviction relief was not "properly filed" and thus did not toll the statute of limitations of § 2244(d)(2).  (Doc. 10 at 11.)  As Respondents assert, these cases establish that a state post-conviction proceeding that is untimely is not "properly filed" under § 2244(d)(2) and does not toll the AEDPA statute of limitations.  *See Pace,* 544 U.S. at 413; *Siebert*, 552 U.S. at 6.  This is because "time limits, *no matter their form*, are 'filing' conditions because they 'go to the very initiation of a petition and a court's ability to consider that petition.'" *Siebert*, 552 U.S. at 6 (emphasis in original) (quoting *Pace*, 544 U.S. at 417).

Furthermore, the phrase "time limits" refers to the time limit for initiating a post-conviction proceeding.  *See Siebert*, 552 U.S. at 6; *Pace*, 544 U.S. at 417.  As the Supreme Court explained, "an application is properly filed when its delivery and acceptance are in compliance with the applicable laws and rules governing filings" including "time limits upon its delivery." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).  In their arguments relying upon these cases, Respondents use the terms "petition," "application" and "proceeding" interchangeably and without acknowledging the different state statutes and rules that are discussed in the various cases and which establish differing procedures for commencing a post-conviction proceeding.

In *Pace*, the Court addressed statutory tolling under the Pennsylvania post-conviction statute and procedural rule, and in *Siebert*, the Court addressed statutory tolling under the Alabama procedural rule.  In Pennsylvania, post-conviction proceedings "'shall be initiated by filing' a verified *petition*." *Pace*, 544 U.S. at 415 (quoting Pa. R. Crim. P. 901) (emphasis added).  The Alabama rule requires the filing of a "*petition*" within a specified time period to commence a post-conviction relief proceeding.  *Siebert,* 552 U.S. at 4, n.1 (quoting Ala. R. Crim. Proc. 32.2(c)) (emphasis added).  As set forth below, the procedures for filing a post-conviction relief proceeding in Arizona differ significantly from the procedures in Pennsylvania

---

U.S. 408, 413 (2005).  Therefore, only the timeliness of Petitioner's third notice of post-conviction relief is at issue with respect to tolling the AEDPA statute of limitations.

and Alabama.  Respondents apparently fail to recognize this distinction. Thus, Respondents mistakenly rely upon *Pace* and *Siebert* to argue that because his *petition* for post-conviction relief was untimely, Petitioner's post-conviction relief proceeding was not "properly filed" and did not toll the AEDPA statute of limitations.

### B.   Arizona Post-Conviction Relief Proceedings

In Arizona, in contrast to both the Pennsylvania and Alabama procedures discussed in *Pace* and *Siebert*, "before filing a petition for relief, a petitioner must first file a 'Notice of Post-Conviction Relief' so that the state guaranteed right to counsel can be enforced." *Isley v. Arizona Dep't of Corr.,* 383 F.3d 1054, 1055 (9th Cir. 2004) (quoting Ariz. R. Crim. P. 32.4(a)). Therefore, in Arizona a post-conviction relief proceeding requires two filings: a *notice* and a *petition*.  Under the Arizona post-conviction relief statute and corresponding procedural rule a "proceeding is commenced by timely filing a *notice* of post-conviction relief with the court in which the conviction occurred." Ariz. R. Crim. P. 32.4; *see also* Ariz. Rev. Stat. § 13-4234(A) (a post-conviction relief "proceeding is commenced by timely filing a notice of post conviction relief with the clerk of the court in which the conviction occurred.").  Thus, the time limit for filing a notice of post-conviction relief under Rule 32.4(a) "places a limit on how long [an Arizona] prisoner can wait" before commencing a post-conviction action. *See Siebert*, 552 U.S. at 6.

Arizona prisoners who have filed a timely *notice* of post-conviction relief, and thereby initiated a post-conviction action, must also comply with a subsequent deadline for filing a supporting petition. Ariz. R. Crim. P. 32.4(c).  The deadline for filing the petition, however, is not established until after (1) petitioner files a timely notice, (2) the court determines whether to appoint counsel, (3) counsel reviews the record to identify colorable claims, and (4) if no such claims exist, notifies the court, which then grants a 45-day extension for petitioner to file a *pro se* petition. *See* Ariz. R. Crim. P. 32.4(c)(2).  In other words, the deadline for filing the *petition* is not established until after the post-conviction proceeding has commenced and is pending for purposes of § 2244(d)(2).

In their Limited Answer, Respondents do not address the effect of Arizona's two-step procedure for seeking post-conviction relief.  They also do not address the Ninth Circuit precedent that has directly decided whether, in Arizona, a petition for post-conviction relief is "'pending' before the state courts within the meaning of § 2244(d)(2) when the Notice was filed or when the actual petition for relief was filed." *Isley*, 383 F.3d at 1055.  To make that determination, the Court in *Isley* analyzed the Arizona post-conviction process, and found that a "proceeding is commenced by timely filing a notice of post-conviction relief." *Id*. at 1056 (citing Ariz. R. Crim. P. 32.4(a)).  Thus, in Arizona, the filing of the *notice* sets "Arizona's mechanism for post-conviction relief in motion." *Id*.  Once the notice is filed, the court determines whether to appoint counsel and the time limit for filing the petition commences. *Id*. (citing Ariz. R. Crim. P. 32.4(c)).

Relying on the plain language of Rule 32.4(a) and the structure of Arizona's post-conviction scheme, the Court held that when a notice is "filed in conformity with the pertinent statutory provisions and contains a specific prayer for relief in the form of a request for a new trial, it is sufficient to toll the AEDPA statute of limitations." *Isley*, 383 F.3d at 1056. Thus, the Court concluded that petitioner's state petition for post-conviction relief was "pending" within the meaning of 28 U.S.C. § 2244(d)(2) and he was entitled to statutory tolling from the date the notice was filed. *Id.*

The Ninth Circuit reaffirmed its holding in *Isley* in *Hemmerle v. Schriro*, 495 F.3d 1069 (9th Cir. 2007).  In *Hemmerle*, petitioner filed his first notice of post-conviction relief pursuant to Rule 32.4(a), and even though the state court granted petitioner numerous extensions to file a petition for post-conviction relief he did not do so and "because no petition or other memoranda had been filed, [the post-conviction relief] notice was summarily dismissed." *Id*. Ultimately, petitioner filed a federal petition for writ of habeas corpus.  Although the federal court determined that the petition for writ of habeas corpus was untimely, it found that petitioner's first notice of post-conviction relief, "which under *Isley* was 'properly filed,' tolled

the AEDPA one-year limitations period at least until it was summarily dismissed." *Id.* at 1074.[7]

In *Stafford v. Ryan*, 477 Fed. Appx. 449 (9th Cir. 2012) (unpublished), the Court reversed the district court's holding that because the petitioner failed to file a *petition*, his post-conviction action was not properly filed and thus did toll the AEDPA limitations period. The Court in *Stafford* held that the AEDPA's one-year limitation period was tolled when petitioner filed a timely *notice* of post-conviction relief under Rule 32.4(a) and remained tolled until the state court dismissed that proceeding. The petitioner's failure to file a petition did not change the Court's determination that the notice of post-conviction relief was properly filed and tolled the AEDPA limitations period because petitioner "did not have to file a petition to commence a post-conviction relief proceeding because Arizona requires a notice (not a petition) to be filed to commence post-conviction relief proceedings." *Id.*. at 450 (citing Ariz. R. Crim. P. 32.1 and 32.4).

Unlike Rule 32.4(a), which specifically provides that filing a timely *notice* commences the post-conviction proceeding in Arizona, the Pennsylvania and Alabama post-conviction schemes at issue in *Pace* and *Siebert* provide that a post-conviction action commences upon the filing of the *petition*. *See Pace,* 544 U.S. at 415; *Siebert,* 552 U.S. at 4. Thus, the operative time limit in those cases was the deadline for filing the *petition*. In Arizona, the deadline for filing a *notice* of post-conviction relief under Rule 32.4(a) is the operative deadline for determining when a post-conviction action is properly filed and pending for purposes of § 2244(d)(2). *See Isley*, 383 F.3d at 1056; *Hemmerle*, 495 F.3d at 1074; *Stafford,* 477 Fed. Appx. at 450. Because Respondents failed to recognize this distinction, and failed to address the applicable Ninth Circuit case law, they erroneously argue that because Petitioner did not file

---

[7] Because the petitioner in *Hemmerle* did not seek further review of the trial court's summary dismissal of his first notice of post-conviction relief, that notice was no longer pending for purposes of § 2244(d)(2) after it was dismissed. *Hemmerle*, 495 F.3d at 1047; *see also Samaniego v. Ryan*, 2011 WL 7109366, *3 (D. Ariz. Dec. 1, 2011) (petition for post-conviction relief remained pending until the date the trial court summarily dismissed the proceeding and because petitioner did not seek appellate review of that dismissal, nothing was pending after the trial court's decision, and the statute of limitations began to run the next day).

a timely *petition* for post-conviction relief, his application for post-conviction was relief was not "properly filed" and did not toll the AEDPA statute of limitations. (Doc. 10 at 11.)

### C.  Petitioner's Post-Conviction Relief Proceeding

On May 16, 2008, Petitioner filed his third notice of post-conviction relief, which was timely under Rule 32.4(a), as Respondents acknowledged in their Objection to the Magistrate Judge's Order. (Doc. 19 at 6); *see also* Ariz. R. Crim. P. 32.4(a) (stating, in pertinent part, that a notice of post-conviction relief must be filed within thirty days "after the issuance of the order and mandate in the direct appeal").  Appointed counsel subsequently notified the court that she could find no claims to raise in a Rule 32 petition and requested an extension of time for Petitioner to file a *pro se* petition.  On December 19, 2008, the court granted Petitioner a 45-day extension, or until February 3, 2009, to file a petition for post-conviction relief.  Petitioner did not file a petition until April 2, 2009 and, on August 28, 2009, the state trial court dismissed the petition pursuant to Rule 32.6(c) finding that Petitioner failed to raise a "colorable claim," and that his claims "were precluded as untimely."  (Respondents' Ex. O, doc. 10-1 at 103.)

In their Limited Answer and in their Objection to the Magistrate Judge's Order, Respondents argue that Petitioner's post-conviction proceedings were not properly filed and did not toll the AEDPA statute of limitations because "the state court explicitly concluded that, under state law, Petitioner's post-conviction petitions were untimely." (Doc. 19 at 6, *see also* Doc. 10 at 11.) The state court however, did not find that the entire post-conviction proceeding was untimely.   Rather, it found that Petitioner's *claims* were precluded as untimely. (Respondents' Ex. O, doc. 10-1 at 103.)  The state court summarily dismissed Petitioner's petition for post-conviction relief finding that  "they [Petitioner's claims] are precluded as untimely."  (*Id.*) When the state court stated that "they" were untimely, it was referring to Petitioner's claims.

Respondents' argument suggests that because the state court dismissed the *petition* for post-conviction relief, the state court necessarily concluded that Petitioner's post-conviction *proceeding* was not "properly filed."  That argument is not supported by the language of the

state court's order nor by its prior order granting Petitioner an extension of time to file a *pro se* petition. As the Ninth Circuit explained in similar circumstances, the state court "necessarily found [petitioner's] notice timely based on Rule 32.4 and Rule 32.2(b), because it allowed [petitioner] an extension of time to file a petition pro per and did not summarily dismiss the notice." *Stafford,* 477 Fed. Appx. at 450. Here, as in *Stafford*, the state court did not summarily dismiss Petitioner's *notice* of post-conviction relief and it granted Petitioner an extension of time to file his *petition*. Thus, by dismissing the petition, the state court did not find that the notice or the proceeding was untimely.

Respondents' argument also fails to acknowledge the significance of the state court's dismissal of the petition "per Rule 32.6(c)." (Respondents' Ex. O, doc. 10-1 at 103.) Rule 32.6(c) provides that "the court shall identify all *claims* that are *procedurally precluded* under this rule." Ariz. R. Crim. P. 32.6(c) (emphasis added). Thus, the state court found that Petitioner's claims were procedurally barred because he did not file a timely petition. As the Supreme Court explained in *Artuz,* "[b]y construing 'properly filed application' to mean 'application raising claims that are not mandatorily procedurally barred,' petitioner elides the difference between an 'application' and a 'claim.' Only individual *claims*, and not the application containing those claims, can be procedurally defaulted under state law pursuant to our holdings." 521 U.S. at 8 (citations omitted). Thus, the state court's order finding that Petitioner's claims were "precluded as untimely" and dismissing the petition does not establish that the application or proceeding was not properly filed.

In their Objection to the Magistrate Judge's Order, Respondents acknowledge for the first time that Petitioner's timely *notice* of post-conviction relief could be significant in determining whether his post-conviction relief proceedings were "properly filed" under the applicable Arizona statute and procedural rule and thus could toll the AEDPA statute of limitations. (Doc. 19 at 7.) Respondents argue, without citation to authority, that even if the timely notice of post-conviction relief tolled the AEDPA limitations period, Petitioner's "failure

1   to observe the state court's deadline of February 3, 2009, in which to file a petition for post-

2   conviction relief ceased any applicable tolling."  (Doc. 19 at 7.)

3       Apparently, Respondents are arguing that even if the notice of post-conviction relief

4   tolled the statute of limitations, that tolling expired on the deadline for Petitioner to file his *pro*

5   *se* petition.  This argument is contrary to the Ninth Circuit case law recognizing that the filing

6   of a notice of post-conviction relief initiates a post-conviction action in Arizona, the post-

7   conviction action is "pending" when the notice is filed in conformity with Rule 32.4(a), and

8   statutory tolling begins on that date and continues "'until the application has achieved final

9   resolution through the State's post-conviction procedures.'" *Hemmerle,* 495 F. 3d 1074 (quoting

10  *Carey v. Staffold*, 536 U. S. 214, 220 (2002)); *see also Isley*, 383 F.3d at 1055-56 (limitations

11  period was not running while state court petition for relief was before the Arizona Supreme

12  Court).

13      Petitioner's notice of post-conviction relief tolled the AEDPA statute of limitations.  *See*

14  *Isley*, 383 F.3d at 1057.  Although Petitioner subsequently failed to file a timely supporting

15  petition, his May 16, 2008 notice was nonetheless "properly filed" and therefore, his post-

16  conviction relief action was "pending," and resulted in statutory tolling, as of that date.  *See* 28

17  U.S.C. § 2244(d)(2).  It remained pending during the time that he sought review in the Arizona

18  Court of Appeals and the Arizona Supreme Court.[8]  Therefore, Petitioner's petition for post-

19  conviction relief was pending as of May 16, 2008 and remained pending for "'all the time

20  during which [Petitioner was] attempting, through proper use of state court procedures, to

21  exhaust state remedies with regard to [that] post-conviction application.'" *See Nino v. Galaza*,

22  183 F.3d 1003, 1006 (9th Cir. 1999) (quoting *Barnett v. Lemaster*, 167 F.3d 1321, 1323 (10th

23  Cir. 1999)).  This period includes the intervals between the disposition of Petitioner's post-

24  ────────────────

25      [8] The trial court dismissed Petitioner's petition for post-conviction relief on August 28,
    2009, finding that his claims were precluded as untimely. Petitioner sought review in the
26  Arizona Court of Appeals on September 9, 2009, which was denied on November 23, 2010.
    (Respondents' Exs. P and Q.)  Petitioner then sought review in the Arizona Supreme Court,
27  which was denied on August 8, 2011.  (Respondents' Ex. R.)

28
                                    - 14 -

conviction petition and the filing of his petitions for review in the Arizona Court of Appeals and Arizona Supreme Court.[9] *Nino*, 183 F.3d at 1006 (statute of limitations is tolled during intervals between disposition of post-conviction petition and the filing of an appeal and the next state appellate level); *Carey*, 536 U.S. at 219 ("Until an application for state post-conviction relief has achieved final resolution through the State's post-conviction procedure, it remains 'pending' for purposes of the tolling provision at sections 2244(d)(2).")

Petitioner's timely notice of post-conviction relief tolled the AEDPA statute of limitations when it was filed and the limitations period remained tolled during the entire time that the post-conviction proceeding was pending before the state courts.[10] Accordingly, Petitioner's federal petition for writ of habeas corpus is timely.  Because statutory tolling applies and the Petition is timely, the Court need not consider whether equitable tolling applies.

**III.  Review of Petitioner's Claims**

In addition to arguing that the habeas Petition is time-barred, Respondents argue that all of Petitioner's claims raised in his habeas Petition are procedurally barred because he failed to raise them in a timely petition for post-conviction relief.  The Court agrees that Petitioner's claims asserted in Grounds Three, Five, Six, Seven, Eight, Ten, Eleven, and Fourteen are barred on that basis.  The Court, however, finds that Petitioner's claims asserted in Grounds One, Two, Twelve, and Thirteen are procedurally barred on a different basis — because Petitioner failed

---

[9]  Respondents argue that Petitioner is not entitled to tolling for the gap between the dismissal of his third post-conviction action and the filing of his fourth notice of post-conviction relief on May 6, 2010.  (Doc. 19 at 8; Respondents' Ex. S).  The Court need not resolve that issue because the AEDPA limitations period was already tolled during that time period. (Respondents' Ex. S.)  The Court agrees, however,  that the fourth notice of post-conviction relief was not properly filed and did not toll the limitations period.  *See Pace*, 544 U.S. at 413.

[10]  The AEDPA statute of limitations commenced on May 5, 2008 and ran for ten days until May 16, 2008, when Petitioner filed his third notice of post-conviction relief.  The statute of limitations remained tolled until August 8, 2011, when the Arizona Supreme Court dismissed Petitioner's petition for review of the denial of his petition for post-conviction relief.  The statute of limitations started running again the next day, ran for 136 days, and had not expired when Petitioner filed his Petition for Writ of Habeas Corpus on December 23, 2011.

to raise those claims either on direct appeal or on post-conviction review. In addition, the Court finds that Petitioner properly exhausted and presented his federal claims asserted in Grounds Four and Nine to the Arizona Court of Appeals on direct appeal. Thus, those claims are properly before this Court on habeas corpus review. The Court will consider the merits of Grounds Four and Nine before addressing the procedural issues pertaining to the remaining grounds for relief.

### A. Exhaustion of State Remedies

Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted available state remedies. 28 U.S.C. § 2254(b). To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court[11] in a procedurally appropriate manner. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[t]o provide the State with the necessary 'opportunity,' the prisoner must "fairly present" her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim."); *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (same).

A claim has been "fairly presented" if the petitioner has described both the operative facts and the federal legal theory on which his claim is based. *Baldwin*, 541 U.S. at 33. A "state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Id*. at 31-32. Thus, "a petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, . . . (2) through the

---

[11] In Arizona, unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if the petitioner has presented his federal claim to the Arizona Court of Appeals either through the direct appeal process or post-conviction proceedings. *Crowell v. Knowles*, 483 F. Supp. 2d 925, 931-33 (D. Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

proper vehicle, . . . and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).

### B. Grounds Four and Nine

In Grounds Four and Nine, Petitioner asserts a due process violation based on several instances of prosecutorial misconduct including improper vouching for a witness, using the prestige of the Attorney General's office to bolster the prosecution's case during closing argument, eliciting hearsay testimony throughout the entire trial, and referring to evidence outside the record. (Doc. 1 at 10, 23.) Petitioner "fairly presented" a federal due process claim based on prosecutorial misconduct to the Arizona Court of Appeals on direct review. (Respondents' Ex. D, doc. 10-1 at 18-34.); *see Baldwin*, 541 U.S. at 33 (A claim has been "fairly presented" if the petitioner has described both the operative facts and the federal legal theory on which his claim is based). The appellate court found that these claims lacked merit. (Respondents' Ex. B, doc. 10-1 at 10-14.)

Because Petitioner's claims of prosecutorial misconduct were adjudicated on the merits in state court, federal habeas relief is not available unless he shows: (1) that the state court's decision "was contrary to" federal law as clearly established in the holdings of the United States Supreme Court at the time of the state court decision, *Greene v. Fisher*, __ U.S.__, 132 S. Ct. 38, 43 (2011); or (2) that it "involved an unreasonable application of" such law, § 2254(d)(1); or (3) that it "was based on an unreasonable determination of the facts" in light of the record before the state court. 28 U.S.C. § 2254(d)(2); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011). This standard is "difficult to meet." *Id.* at 786. It is also a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*) (citation and internal quotation marks omitted).

To prevail on a claim of prosecutorial misconduct, petitioner must show that the misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. *See Greer v. Miller*, 483 U.S. 756, 765 (1987). The court must examine the

conduct to determine "whether, considered in the context of the entire trial, that conduct appears likely to have affected the jury's discharge of its duty to judge the evidence fairly." *United States v. Simtob*, 901 F.2d 799, 806 (9th Cir. 1990).   A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.").   Under *Darden*, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness.   *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005).

The primary factor in determining the prejudicial effects of misconduct is whether the trial court issued a curative instruction.   When the court issues a curative instruction, a reviewing court presumes that the jury disregarded inadmissible evidence and that no due process violation occurred.   *See Greer*, 483 U.S. at 766 n.8. (1987).   A petitioner may overcome this presumption if there is an "overwhelming probability" that the jury would be unable to disregard evidence and a strong likelihood that the effect of the misconduct was "devastating" to the petitioner. *Id.*

### 1. Eliciting Hearsay Testimony from a Witness

Petitioner argues that the prosecutor engaged in misconduct by continually eliciting hearsay testimony. (Doc. 1 at 10.) Petitioner does not describe the alleged hearsay testimony or identify the witness from whom the prosecutor allegedly elicited this testimony.   Although Petitioner likely refers to testimony the prosecutor elicited from E.K., which Petitioner challenged on direct appeal, he has not shown that the state court's rejection of this claim of prosecutorial misconduct was contrary to or an unreasonable application of Supreme Court precedent. *See* 28 U.S.C. § 2254(d).

On direct examination of E.K., the prosecutor elicited testimony regarding meetings between E.K. and his attorney and E.K. and Perez. (Respondents' Ex. B, Doc. 10-1 at 13.) When E.K. began testifying about what his attorney and Perez said during those meetings,

Petitioner's counsel objected. The court sustained defense counsel's objections and "explained to E.K. that he could testify about what [Petitioner] said, but not what third parties told him." (*Id.*) Later, E.K. testified about a meeting he had with his son. When he started discussing his son's statements during that meeting, defense counsel objected. The trial court "admonished both the prosecutor and the witness" that "E.K. could 'not testify as to what someone else told him'" unless he established an exception to the hearsay rule. (*Id.*) The trial court also instructed the prosecutor to "ask better questions" or "spend more time with your witness in preparation." (*Id.*) The appellate court found that the prosecutor's direct examination of E.K. did not constitute prosecutorial misconduct. Rather, the court found that the "prosecutor was at times inartful in framing questions that would prevent E.K. from giving testimony that contained inadmissible hearsay." (*Id.*) The court further found that E.K. did not following the trial court's instructions, "despite defense counsel's objections and the court's admonitions." (*Id.*)

In support of his claims in Grounds Four and Nine, Petitioner asserts that the "prosecutor continually elicited hearsay testimony from the alleged victim as to matters he heard from other sources," and "highlight[ed] false testimony," even after the court admonished him, but does not address why the appellate court's resolution of this claim was contrary to, or an unreasonable application of, federal law. (Doc. 1 at 10, 23.) Moreover, the record reflects that defense counsel made objections to the improper questions, which the trial court sustained, and there is no evidence that the prosecutor's challenged direct examination of E.K. "affected the jury's discharge of its duty to judge the evidence fairly." *United States v. Simtob*, 901 F.2d 799, 806 (9th Cir. 1990). Accordingly, Petitioner is not entitled to relief on this claim.

### 2. Improper Vouching

Petitioner also argues that "the prosecutor improperly vouched for the witness" by placing the prestige of the government behind its case and by referring to "evidence outside the record" in violation of the Due Process Clause. (Doc. 1 at 10.) Petitioner does not identify "the witness" or describe how the prosecutor allegedly vouched for that witness. Even assuming Petitioner is referring to Agent Walsh and the prosecutor's closing arguments pertaining to

Walsh's testimony, which he challenged on direct appeal, Petitioner has not shown that the state court's resolution of that claim was contrary to, or an unreasonable application of Supreme Court precedent. 28 U.S.C. § 2254(d).

On direct appeal, Petitioner argued that the prosecutor improperly vouched for its witnesses by placing the prestige of the government behind its case. During closing argument, Petitioner's defense attorney argued that the case was not criminal in nature, but was a "breach of an alleged business agreement . . . [that] is better left in a civil courtroom" and told the jury that it would "see nothing in [its] instructions where the breach of an agreement amounts to a crime." (Doc. 10-1 at 13.) To rebut this argument, the prosecutor argued that defense counsel "'alluded to something else which is one of the fundamental things of our office. We don't take civil . . . ,' [defense] counsel objected, the court sustained the objection and told the prosecutor 'what your office does is not evidence, so please argue the evidence on the record. Let's not talk about what offices do." (Respondents' Ex. B, Doc. 10-1 at 13.)

Petitioner also argued that the prosecutor engaged in improper vouching by suggesting that evidence outside the record supported Agent Walsh's testimony. (*Id.*) On direct examination, Agent Walsh testified about money the suppliers returned to Petitioner. On cross-examination, defense counsel inquired about inconsistencies between testimony Agent Walsh gave during a prior proceeding on August 16, 2005, and his trial testimony regarding money that remained from E.K.'s investment, which was relevant to determining the amount of E.K.'s loss. (*Id.*; Doc. 10-1 at 25.) Defense counsel asked Agent Walsh if he had previously testified that the amount was $101,000, not $166,000 as he had testified at trial. Agent Walsh stated that he did not recall making that statement in 2005. On redirect, the prosecutor asked Agent Walsh to explain the inconsistency regarding the amounts of money. Agent Walsh responded that in 2005 he was not aware of certain property that was still in Mexico and that he did not know the specific amounts of money involved at that time. (Respondents' Ex. D, Doc. 10-1 at 13.)

During closing argument, defense counsel argued that, based on Agent Walsh's August 16, 2005 statement and other factors, E.K. suffered no monetary loss, but had received sufficient

money from the sales and still had the right to possess the unsold pottery.  (Respondents' Ex. D, Doc. 10-1 at 26.)  He further argued that the correct figure was $ 101,000.  (Doc. 10-1 at 13-14.)  In rebuttal, the prosecutor argued that the $101,000 figure was based on incomplete information that Agent Walsh had in 2005, and that the evidence at trial showed that E.K. suffered a greater monetary loss. (*Id*.)  Defense counsel objected to the prosecutor's arguments regarding the amount of loss that E.K. sustained.  The court sustained the objections, told the prosecutor to "'[s]tick to what the facts are in evidence" and, when the prosecutor again made arguments regarding the $101,000 figure, struck the prosecutor's comment.  (*Id*.)  After closing arguments, defense counsel moved for a mistrial based on the prosecutor's remark that his office does not handle civil cases and his comment that the $101,000 figure underestimated E.K.'s loss because the government "didn't have all the information."  (Respondents' Ex. B, Doc. 10-1 at 14.)  The trial court denied the motion.   (*Id.*)

The appellate court found no prosecutorial misconduct and no due process violation noting that the trial court sustained defense counsel's objections to the prosecutor's comments, told the jury to disregard the challenged comments, "and instructed the jury to disregard any questions or answers provided to questions [to] which the court sustained an objection." (Doc. 10-1 at 14.)  The court further "instructed the jury that what the lawyers said in opening and closing statements is not evidence." (*Id*.)

Although Petitioner challenges the prosecutor's alleged improper vouching by relying on the prestige of the government and referring to evidence outside the record to support its case, he does not address why the appellate court's resolution his claims of prosecutorial misconduct was contrary to, or an unreasonable application of, federal law.  Moreover, even if the prosecutor made improper statements and arguments, the court gave curative instructions to the jury.  Thus, the jury presumably disregarded any inadmissible evidence or arguments and no due process violation occurred.  *See Greer*, 483 U.S. at  766 n. 8.  Petitioner has not offered any arguments to overcome this presumption.  *See id.*  Because Petitioner has not established that the prosecutor engaged in misconduct that gave rise to a due process violation, he cannot

1  show that the state court's rejection of this claim is contrary to, or an unreasonable application

2  of, clearly established federal law.  *See* 28 U.S.C. § 2254(d).  Therefore, he is not entitled to

3  habeas corpus relief on Grounds Four and Nine.

4  **C.  Procedural Bar**

5  The requirement that a petitioner exhaust available state court remedies promotes comity

6  by ensuring that the state courts have the first opportunity to address alleged violations of a state

7  prisoner's federal rights.  *See Duncan v. Walker*, 533 U.S. 167, 178 (2001); *Coleman v.*

8  *Thompson*, 501 U.S. 722, 731 (1991).  Principles of comity also require federal courts to respect

9  state procedural bars to review of a habeas petitioner's claims.  *See Coleman*, 501 at 731-32.

10  Pursuant to these principles, a habeas petitioner's claims may be precluded from federal review

11  in two situations.

12  First, a claim may be procedurally defaulted and barred from federal habeas corpus

13  review when a petitioner failed to present his federal claims to the state court, but returning to

14  state court would be "futile" because the state court's procedural rules, such as waiver or

15  preclusion, would bar consideration of the previously unraised claims.  *See Teague v. Lane*, 489

16  U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).  If no state

17  remedies are currently available, a claim is technically exhausted, but procedurally defaulted.

18  *Coleman*, 501 U.S. at 732, 735 n.1.

19  Second, a claim may be procedurally barred when a petitioner raises a claim in state

20  court, but the state court finds the claim barred on state procedural grounds.  *See Beard v.*

21  *Kindler*, 558 U.S. 53, 130 S. Ct. 612, 614-19 (2009).  "[A] habeas petitioner who has failed to

22  meet the State's procedural requirements for presenting his federal claim has deprived the state

23  courts of an opportunity to address those claims in the first instance."  *Coleman,* 501 U.S. at

24  731-32.  In this situation, federal habeas corpus review is precluded if the state court opinion

25  relies on a procedural ground "that is both 'independent' of the merits of the federal claim and

26  an 'adequate' basis for the court's decision."  *Harris v. Reed*, 489 U.S. 255, 260 (1989).  A state

27  procedural ruling is "independent" if the application of the bar does not depend on an

28

antecedent ruling on the merits of the federal claim. *See Stewart v. Smith*, 536 U.S. 856, 860 (2002); *Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985). A state court's application of the procedural bar is "adequate" if it is "strictly or regularly followed." *See Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994). If the state court occasionally excuses non-compliance with a procedural rule, that does not render its procedural bar inadequate. *See Dugger v. Adams*, 489 U.S. 401, 410-12 n. 6 (1989). "The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Coleman*, 501 U.S. at 732. Although a procedurally barred claim has been exhausted, as a matter of comity, the federal court will decline to consider the merits of that claim. *See id.* at 729-32.

However, because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *See Reed v. Ross*, 468 U.S. 1, 9 (1984). Generally, a federal court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates "cause" for the failure to properly exhaust the claim in state court and "prejudice" from the alleged constitutional violation, or shows that a "fundamental miscarriage of justice" would result if the claim were not heard on the merits. *Coleman*, 501 U.S. at 750. Additionally, pursuant to 28 U.S.C. § 2254(b)(2), the court may dismiss plainly meritless claims regardless of whether the claim was properly exhausted in state court. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005) (holding that a stay is inappropriate in federal court to allow claims to be raised in state court if they are subject to dismissal under § 2254(b)(2) as "plainly meritless").

**D. Grounds One, Two, Twelve, and Thirteen**

The record reflects that Petitioner never presented his federal claims asserted in Grounds One, Two, Twelve, and Thirteen to the Arizona Court of Appeals either on direct appeal or on

1   post-conviction review.[12]   (Respondents' Ex. D, N.)  Accordingly, although these claims are

2   technically exhausted, they are subject to the doctrine of procedural default.  *See Woodford v.*

3   *Ngo*, 548 U.S. 81 (2006) (discussing technical exhaustion principle that when state-court

4   remedies are no longer available, those remedies are technically exhausted); *Souliotes v.*

5   *Hedgpeth*, 2012 WL 3205433, at *3 (E.D. Cal. Aug. 2, 2012) (stating that "recent Supreme

6   Court authority requires [a district court on habeas corpus review] to consider claims that were

7   not exhausted and no longer capable of review in state court as technically exhausted.").

8        Petitioner cannot return to state court to properly present his claims asserted in Grounds

9   One, Two, Twelve, and Thirteen because no state remedies are available.  *See Coleman*, 501

10   U.S. at 732 ("A habeas petitioner who has defaulted his federal claims in state court meets the

11   technical requirements for exhaustion; there are no remedies any longer 'available' to him.").

12   Petitioner can no longer present his claims on direct appeal because he already pursued direct

13   review, and Arizona's Rules of Criminal Procedure do not provide for a successive direct

14   appeal.  *See generally* Ariz. R. Crim. P. 31.

15        Additionally, Petitioner can no longer seek review of his claims in a subsequent post-

16   conviction action.  Rule 32.4 requires that a state prisoner file a petition for post-conviction

17   relief "within ninety days after entry of judgment and sentence or within thirty days after the

18   issuance of the order and mandate in direct appeal, whichever is later."  *See* Ariz.

19   R. Crim. P. 32.4(a); *State v. Pruett*, 912 P.2d 1357 (Ariz. Ct. App. 1995) (applying Rule 32.4

20

---

21        [12]  In Ground One, Petitioner argues that because the crimes took place in Mexico, the

22   trial court lacked jurisdiction and his prosecution violated his Fourteenth Amendment rights to
due process.  (Doc. 1 at 6.)  In Ground Two, Petitioner asserts that his Sixth and Fourteenth

23   Amendment rights were violated because he was "convicted under the Intangible Rights
Theory" and that Arizona Revised Statute § 13-105.2, § 13-2301.E.12, and § 13-2310.E are

24   unconstitutional.  (*Id*. at 7.)  In Ground Twelve, Petitioner argues that trial counsel was

25   ineffective in violation of the Sixth Amendment for failing to explain "any plea offers," failing
to explain the "merits and/or non-merits of going to trial," and giving "erroneous advice to

26   reject the plea officer."  (*Id*. at 26.)  In Ground Thirteen, he alleges that trial counsel was

27   ineffective for failing to object to the verdict form and for failing to request a verdict form that
included "interrogatories" regarding the victim's financial loss.  (*Id*. at 27.)

28

1    to successive petition).  The time for filing a notice for post-conviction relief expired long ago.

2    Although Rule 32.4(a) does not bar dilatory claims if they fit within the category of claims

3    provided in Rules  32.1(d) through (h), Petitioner has not specifically asserted that any of these

4    exceptions apply to his claims asserted in Grounds One, Two, Twelve, or Thirteen.[13]  Nor does

5    it appear that any of the exceptions in Rule 32.1 would apply to these claims.

6        Accordingly, Petitioner's claims raised in Grounds One, Two, Twelve, and Thirteen are

7    procedurally defaulted and, unless Petitioner establishes "cause and prejudice" or a

8    "fundamental miscarriage of justice," habeas corpus review is barred.  As discussed below in

9    Section F, Petitioner has not made either showing.

10       **E.  Grounds Three, Five, Six, Seven, Eight, Ten, Eleven, and Fourteen**

11       Petitioner raised his federal claims asserted in Grounds Three, Five, Six, Seven, Eight,

12   Ten, Eleven, and Fourteen for the first time in his third petition for post-conviction relief.[14]

13   _____

14       [13]  Petitioner explains that he did not present the claim asserted in Ground Two in the
     state courts because the "U.S. Supreme Court decided case after [his] remedies were exhausted.
15   This applies retroactively."  (Doc. 1 at 7.)  Petitioner does not identify the "U.S. Supreme
     Court" decision which invalidates his convictions or provide any other factual or legal support
16   for his claim.  Even assuming Petitioner's claims in Ground Two were properly before this
     Court, his unsupported, conclusory allegations are not sufficient to support a claim for federal
17   habeas corpus relief.  *See Jones v. Gomez*, 66 F.3d 199, 204-05 (9th Cir. 1995) (conclusory
     allegations with no reference to the record or other evidence do not warrant habeas relief).
18
19       [14]  In Ground Three, Petitioner asserts that the prosecutor failed to disclose exculpatory
20   evidence in violation of *Brady v. Maryland*.  (Doc. 1 at 8).  In Ground Five, Petitioner asserts
     that he was convicted of crimes committed by E.K. whose "lawyers used their contact with the
21   Attorney General to create a synthetic crime."  (*Id*. at 11).  In Grounds Six and Fourteen, which
     are identical, Petitioner argues that trial counsel was ineffective for (1) failing to adequately
22   investigate the case; (2) failing to object to the prosecution's investigator testifying without
     being sequestered; (3) failing to request a jury instruction regarding witnesses' inconsistent
23   statements; (4) failing to prepare for and failing to meaningfully cross-examine the State's
24   witnesses; and (5) failing to obtain an accountant to testify as an expert.  (Doc. 1 at 12-21 and
     28-36).  In Ground Seven, Petitioner argues that trial counsel was ineffective for failing to give
25   appellate counsel, post-conviction counsel, or Petitioner his case file.  (*Id*. at 21.)  In Grounds
26   Eight and Ten, Petitioner reiterates his claims that trial counsel was ineffective for failing to (1)
27   adequately investigate, (2) sufficiently review the State's case, (3) sufficiently prepare for trial,

28                                          - 25 -

1   (Respondents' Ex. N, doc. 10-1 at 82-99.)  The trial court summarily dismissed Petitioner's

2   petition for post-conviction relief finding that his claims lacked merit, and alternatively, that

3   they were precluded as untimely based on Petitioner's failure to file a timely petition for post-

4   conviction relief.  (Respondents' Ex. O, Doc. 10-1 at 103.)  The Arizona Court of Appeals and

5   Arizona Supreme Court summarily affirmed this ruling.  The higher courts' subsequent "silent"

6   denials of review affirm the lower court's application of a procedural bar. *See Ylst v.*

7   *Nunnemaker*, 501 U.S. 797, 803 (1991) ( when "the last reasoned opinion on the claim

8   explicitly imposes a procedural default, we will presume that a later decision rejecting the claim

9   did not silently disregard that bar and consider the merits").  Thus, federal habeas corpus review

10  is precluded if the procedural ground upon which the state court relied, is "both 'independent'

11  of the merits of the federal claims and an 'adequate' basis for the court's decision." *Harris v.*

12  *Reed*, 489 U.S. 255, 260 (1989).

13         The Ninth Circuit has established a burden shifting analysis to determine the adequacy

14  of a state procedural bar.  *See Bennett v. Moeller*, 322 F.3d 573, 585-86 (9th Cir. 2003).  Once

15  the government asserts "the existence of an independent and adequate state procedural ground

16  as an affirmative defense, the burden to place that defense in issue shifts to the petitioner." *Id*.

17  at 586.  Petitioner "may satisfy this burden by asserting specific factual allegations that

18  demonstrate the inadequacy of the state procedure, including citation to authority demonstrating

19  inconsistent application of the rule." *Id*.  The burden then shifts back to the government, which

20  bears the "ultimate burden of proving the adequacy" of the relied-upon ground. *Id*.  Petitioner

21  does not argue that the state procedural ground — a timeliness rule — was inadequate and thus,

22

23

_____

24

25  (4) interview and call all relevant witnesses, (5) meaningfully cross-examine witnesses, and (5) discuss the State's case with Petitioner.  (*Id*. at 22, 24.)  In Ground Eleven, Petitioner asserts a

26  due process violation based on the post-conviction court's refusal to provide him with transcripts of the July 19, 2006 morning trial sessions, which Petitioner argues were essential

27  to his claims of ineffective assistance of counsel.  (*Id*. at 25.)

28

1    has not met his burden of placing it at issue. *Id*. Moreover, as set forth below, the procedural

2    rule is "independent" and "adequate."

3        After Petitioner filed a notice of post-conviction relief and the court appointed counsel

4    who notified the court that she found no "colorable claims" to raise on Petitioner's behalf, the

5    court granted Petitioner an extension of "45 days from the date the notice [was] filed" to file a

6    petition "*in propria* persona." (Respondents' Exs. L, M); *see* Ariz. R. Crim.P. 32.4(c)(2). The

7    state court's ruling that the petition was untimely because it was filed after the deadline, is not

8    based on the merits of the claims asserted in the petition, and thus is "independent" of federal

9    law. *See Stewart*, 536 U.S. at 860 (procedural rule is independent if its application does not

10   depend on an antecedent ruling on the merits of the federal claim).

11       The procedural rule is "adequate" because Arizona courts routinely dismiss post-

12   conviction proceedings based on a petitioner's failure to file a timely petition for relief. *See*

13   *Pollard v. Schriro*, 2006 WL 3512037, at *3 (D. Ariz. Dec. 6, 2006) (post-conviction court

14   dismissed Rule 32 proceeding based on petitioner's failure to file a timely petition); *State v.*

15   *Carillo*, 2007 WL 5600602, at *1 (Ariz. Ct. App. Nov. 7, 2007) (post-conviction court

16   summarily dismissed Rule 32 proceeding based on petitioner's failure to file a timely petition).

17   The statutory authority for post-conviction proceedings, Ariz. Rev. Stat. § 13-4234, provides

18   that "[t]he time limits are jurisdictional, and an untimely filed notice or petition shall be

19   dismissed with prejudice." Ariz. Rev. Stat. § 13–4234(G). The Ninth Circuit has held that

20   Arizona's procedural rules, including its timeliness rules, are "clear" and "well-established."

21   *Simmons v. Schriro*, 187 Fed. Appx. 753, 754 (9th Cir. 2006).

22       Petitioner has not cited any authority demonstrating that Arizona courts inconsistently

23   apply the deadlines set forth in Rule 32.4 for filing a petition or that the rule is inadequate. (*See*

24   docs. 13 and 15.) Accordingly, Petitioner has not met his threshold burden, and the state court's

25   dismissal of his petition as untimely under Rule 32.4(c)(2), is an adequate and independent bar

26   to federal habeas relief. The state court's alternative ruling on the merits does not vitiate the

27   procedural bar. *See Harris*, 489 U.S. at 264 n.10. Accordingly, Petitioner's claims in Grounds

28

Three, Five, Six, Seven, Eight, Ten, Eleven, and Fourteen are procedurally barred from federal habeas corpus review unless Petitioner establishes "cause and prejudice" or a "fundamental miscarriage of justice."[15]   *See Coleman*, 501 U.S. at 729-30.   As discussed in Section F, Petitioner has not made either showing.

### F. Overcoming the Procedural Bar

Petitioner's claims asserted in Grounds One, Two, Three, Five, Six, Seven, Eight, Ten, Eleven, Twelve, Thirteen, and Fourteen are procedurally defaulted and barred from federal habeas corpus review unless he establishes either "cause and prejudice" or a "fundamental miscarriage of justice." *See Dretke v. Haley*, 541 U.S. 386, 393-94, (2004); *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995).

### 1. Cause and Prejudice

To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Teague*, 489 U.S. at 298.   The Supreme Court "'has not given the term 'cause' precise content.'"   *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir.1990) (quoting *Reed*, 468 U.S. at 13).   The Supreme Court has suggested, however, that cause ordinarily turns on some objective factor external to petitioner, such as a showing of "interference by officials," constitutionally ineffective assistance of counsel, or "that the factual or legal basis for a claim was not reasonably available." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).   "Prejudice" is actual harm resulting from the constitutional violation or error.   *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984).

To establish prejudice, a habeas petitioner must demonstrate that the alleged constitutional violation "worked to his *actual* and substantial disadvantage, infecting his entire

---

[15]   In his fourth notice of post-conviction relief, Petitioner again raised the *Brady* violation that he asserts in Ground Three.   (Respondents' Ex. S.)   The post-conviction court dismissed the notice as untimely under Rule 32.4(a).   Thus, this claim is still precluded pursuant to the state court's application of an adequate state procedural rule that is independent from the merits of the claims.

trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991). Although petitioner must show both "cause" and "prejudice" to excuse a procedural default, when petitioner fails to establish "cause," the court need not consider whether petitioner has established prejudice resulting from the alleged constitutional violation. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982).

Here, to establish "cause," Petitioner asserts that the trial court erred in failing to rule on his motion for extension of time to file his petition for post-conviction relief.[16] (Doc. 13 at 14; Doc. 15 at 2.) Petitioner, however, does not explain how the court's failure to rule on his motion for extension of time prevented him from presenting his claims to the state court on post-conviction review. After counsel notified the court that she could find no claims to raise, the court granted Petitioner a 45-day extension until February 3, 2009 to file a *pro se* petition for post-conviction relief. On January 22, 2009, Petitioner filed a motion requesting that the court extend the deadline for him to file his petition for "90 days after he received discovery." (Doc. 15 at 9, 30-34, 55-56.) On the existing record, the Court cannot determine whether the court ruled on the motion for extension of time. (*Id.*) Nonetheless, Petitioner was aware of the February 3, 2009 deadline, and the court's failure to rule on a motion for extension of time did not excuse noncompliance with that deadline. Additionally, Rule 32.4(c)(2) provides that "any extensions beyond the 45 days shall be granted only upon a showing of extraordinary circumstances," and nothing in the Rule suggests that Petitioner could unilaterally suspend or extend the deadline for filing his petition. Thus, even assuming the court failed to rule on a

---

[16] Petitioner also asserts that the trial court demonstrated bias against him by holding off-the-record meetings regarding the admissibility of evidence outside of Petitioner's presence. (Doc. 13 at 14.) The Court will not consider these assertions because they pertain to the underlying criminal matter, not to Petitioner's efforts to exhaust his federal claims on direct appeal or post-conviction review. Moreover, Petitioner has not exhausted an independent claim of judicial bias and it is not properly before the Court on habeas corpus review.

1   motion for extension of time, Petitioner has not shown that the court's failure prevented him

2   from filing a timely petition for post-conviction relief raising all of his claims for relief.

3       Petitioner also argues that the "State's withholding of exculpatory evidence at trial

4   constitutes cause for his failure to present evidence to support his federal claim in state court."

5   (Doc. 15 at 5.)  He asserts that counsel's failure to give Petitioner his "trial file" exacerbated this

6   issue and that his petition for post-conviction relief would have been more "detailed and

7   complete if the court enforced its order for trial counsel to supply . . . his trial file."  (Doc. 13

8   at 12; Doc. 15 at 5.)  Petitioner, however, states that he attached "105 exhibits" to his petition

9   for post-conviction relief and does not identify or describe any missing documents or materials

10  that prevented him from timely presenting his federal claims to the state courts.

11      Finally, Petitioner argues "cause" based on his limited access to legal materials due to

12  his status as an inmate.  (Doc. 15 at 7.)  Petitioner's status as an inmate and limited legal

13  resources do not constitute cause to excuse the procedural bar.  *See Hughes v. Idaho State Bd.*

14  *of Corr.*, 800 F.2d 905, 909 (9th Cir. 1986) (an illiterate *pro se* petitioner's lack of legal

15  assistance did not amount to cause to excuse a procedural default); *Tacho v. Martinez*, 862 F.2d

16  1376, 1381 (9th Cir. 1988) (petitioner's arguments concerning his mental health and reliance

17  upon jailhouse lawyers did not constitute cause). Petitioner has not presented any basis

18  sufficient to establish "cause" to overcome the procedural bar, therefore, the Court need not

19  reach the prejudice issue.  *See Engle*, 456 U.S. at 134 n.43 (1982).

20              **2. Fundamental Miscarriage of Justice**

21      Additionally, Petitioner has not shown that failure to consider his defaulted claims will

22  result in a "fundamental miscarriage of justice." A federal court may review the merits of a

23  procedurally defaulted habeas claim if the petitioner demonstrates that failure to consider the

24  merits of his claims will result in a "fundamental miscarriage of justice."  *Schlup*, 513 U.S. at

25  327.  A "fundamental miscarriage of justice" occurs when "'a constitutional violation has

26  probably resulted in the conviction of one who is actually innocent.'"  *Id.* (citing *Murray v.*

27  *Carrier*, 477 U.S. 478, 496 (1986)).  This gateway "actual innocence" claim is a less stringent

28

- 30 -

standard than a substantive claim of actual innocence. *Schlup*, 513 U.S. at 315-16; *see also Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (suggesting that a "habeas petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt about his guilt and must affirmatively prove that he is innocent.").

The fundamental miscarriage of justice exception applies only to a "narrow class of cases" in which a petitioner makes the extraordinary showing that an innocent person was probably convicted due to a constitutional violation. *Schlup*, 513 U.S. at 327. "To establish the requisite probability," the petitioner must prove with new reliable evidence that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. New evidence presented in support of a fundamental-miscarriage-of-justice claim may include "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Id.* at 324; *see also House v. Bell*, 547 U.S. 518, 538 (2006) (stating that a fundamental miscarriage of justice contention must involve "evidence the trial jury did not have before it").

Petitioner has not identified any new and reliable evidence that was not presented at trial. Petitioner argues that he "hired a private investigator who obtained some of the hidden *Brady* material" (Doc. 15 at 2), but he does not identify that evidence, explain why it constitutes "newly discovered" evidence, or establish that in light of the allegedly newly discovered evidence "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 324, 327.

## IV. Conclusion

In summary, Petitioner has not shown that the state court's resolution of his claims of prosecutorial misconduct asserted in Grounds Four and Nine is contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d). Accordingly, he is not entitled to habeas corpus relief on those claims. Petitioner's remaining claims are defaulted and barred from federal habeas corpus review.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED and DISMISSED.**

**IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave to proceed in forma pauperis on appeal be denied because dismissal of the Petition is justified by a plain procedural bar and reasonable jurists would not find the ruling debatable and because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1) should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the District Court's acceptance of the Report and Recommendation without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

DATED this 18th day of January, 2013.

Bridget S. Bade
United States Magistrate Judge